UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 04 B 2682 |
| | ) | |
| SUSAN MARY IRONS, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NEAL DRAZIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 04 A 02054 |
| | ) | |
| SUSAN MARY IRONS, | ) | |
| | ) | |
| Defendant. | ) | Judge Jacqueline P. Cox |

MEMORANDUM OPINION ON PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

This matter concerns the interpretation of a Marital Settlement Agreement entered into by Debtor Susan Mary Irons and her former spouse Neal Drazin in connection with the dissolution of their marriage on January 7, 1999. They were married on August 24, 1986. The Judgment for Dissolution of Marriage incorporated a previously executed Marital Settlement Agreement ("M.S.A.") in which the parties agreed to the division of their assets and responsibility for debts.

At the time of the judgment, the Plaintiff Neal Drazin was unemployed; his sole source of support was Social Security disability benefits. Defendant Susan Mary Irons was then employed by Select Staffing.

At page 10 in an unnumbered paragraph entitled "Debts and Obligations," the agreement states that each party shall be responsible for any debts owed to his or her parents and any debts

incurred in his or her own name. The agreement indicated that the Debtor was to be solely responsible for leased property on Division Street in Elgin. The provision at issue here provided that the wife would be solely responsible for the income tax debt owed to the IRS and would hold the husband harmless as to that debt.

In an unnumbered paragraph entitled "Maintenance," each spouse waived maintenance. However, the agreement further indicates that notwithstanding the waivers, should a party fail to pay any debt for which he or she is required to hold the other spouse harmless, the party to be held harmless will be deemed in need of maintenance and entitled to claim maintenance. Thus, the issue of maintenance was reserved to the extent that debt was allocated to one spouse but not paid.

The above facts are undisputed.

Susan Mary Irons filed for protection under Chapter 7 of the United States Bankruptcy Code on January 23, 2004. She scheduled her marriage-dissolution-case debt to Drazin as an unsecured nonpriority claim in the amount of $31, 232.00. Plaintiff Neal Drazin initiated this adversary proceeding to determine the dischargeability of his former spouse's debt under 11 U.S.C. § 523(a)(5) and (a)(15). Plaintiff Neal Drazin has requested in the instant Summary Judgment Motion that the court rule as a matter of law that Susan Mary Iron's debt to him is not dischargeable. Susan Mary Irons has filed a response to the motion; Neal Drazin has filed a reply. Neither party has indicated disagreement as to any issue of material fact.

The Bankruptcy Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157(a) and the United States District Court for the Northern District of Illinois' Internal Operating Procedure 15(a). This is a core proceeding for which this court has authority to render a final judgment pursuant to 28 U.S.C. §157(b)(2)(I).

Although the M.S.A. provided that Susan Mary Irons would pay the IRS debt, she did not pay it. Neal Drazin paid it and seeks to bar her from discharging said debt. His position is that this debt is a maintenance and support obligation which is excepted from discharge by 11 U.S.C. §523(a)(5), which by its terms excepts from discharge a debt to a former spouse for alimony, maintenance or support of such spouse in connection with a divorce decree. This nondischargeability provision applies only if the debt is actually in the nature of alimony, maintenance or support.

Defendant Susan Mary Irons counters that the M.S.A. does not give rise to a claim for maintenance or support but that by its terms it indicates that her failure to pay the IRS debt allows her former spouse to sue for maintenance. Her position is that there is now no claim for maintenance and support in the state court dissolution case. She claims that her obligation is merely to repay a loan to her former spouse. She also argues that the "Maintenance" provision is not a specific debt owing to her former spouse, although the agreement includes "hold harmless" language for both the IRS debt and the Elgin Division Street lease that clearly corresponds to the similar language in this provision.

Whether a marital debt is nondischargeable alimony, maintenance, or support within the meaning of 11 U.S.C. § 523(a)(5) or a potentially nondischargeable property-settlement obligation within the meaning of § 523(a)(15) is a matter of federal bankruptcy law, not state law. *In re MacDonald*, 69 B.R. 259, 267 (Bankr. D.N.J. 1986); *In re Brodsky*, 239 B.R. 365, 371 (Bankr. N.D. Ill. 1999). Under the former provision, the central issue is whether the state court and the parties intended upon entry of the divorce decree that a hold-harmless agreement for a specific marital debt

would be in the nature of maintenance or support for the spouse being released of the obligation.[1] *See MacDonald*, 69 B.R. at 268; *Brodsky*, 239 B.R. at 371. Thus, the Court will look at the facts and circumstances as they existed at that time to discern intent; "[i]f the respective situations of the parties have changed any recognition of this fact or adjustment of their respective obligations are matters for the state domestic relations court." *Matter of Gentile*, 16 B.R. 381, 383 (Bankr. S.D. Ohio 1982).

Hold-harmless agreements such as the one in this case originate from two different underlying debts: (1) a joint debt of a married couple to a third party (such as the IRS) and (2) an obligation between the couple whereby one spouse is assigned total and complete liability for such marital debt. *MacDonald*, 69 B.R. at 278. Where the circumstances warrant holding so, the latter category of debt can constitute "alimony, maintenance, or support" under federal bankruptcy law in spite of the fact that the spouse with the liability must pay the money to a third party. *See id.* at 271-72, 277-78; *In re Brodsky*, 239 B.R. 365, 371 (Bankr. N.D. Ill. 1999). At first blush, an allocation of marital debt would appear to be part and parcel of an allocation of the property and, therefore, not in the nature of support or maintenance; however, all assumptions of joint debt by one party will always (at least indirectly) have the effect of providing for the necessities of the other party, especially when the debt itself was for a necessity. *MacDonald*, 69 B.R. at 272. Thus, bankruptcy courts must look to various factors to determine whether an assumption of a marital debt falls within § 523(a)(5) or § 523(a)(15).

---

[1] While the legal issue presented may be a question of federal law, the intent of the parties may be "flavored by the state law since all domestic relations law is of state law origin." *MacDonald*, 69 B.R. 259, 267.

In re Brodsky, 239 B.R. 365 (Bankr. N.D. Ill. 1999), discusses the factors which test whether a property settlement is actually in the nature of alimony or maintenance. Those factors include:

(1) whether the obligation terminates upon the death or remarriage of either spouse (termination of the obligation indicates the obligation was for support);
(2) whether the obligation is payable in a lump sum or in installments over a period of time (obligation spread over time indicates the obligation was for support);
(3) whether the payments attempt to balance the parties' income (payments to balance income indicate the payments were for support);
(4) the characterization of the obligation in the decree (obligation described as support indicates the obligation was for support).
(5) the placement of the obligation in the decree (obligation under the heading support indicates the obligation was for support);
(6) whether there is any mention of support payments (separate mention of support payments indicates the obligation is not for support);
(7) whether there are children who need support (if children are of the age when support is required, this indicates the payments may be for support);
(8) whether there is a large differential in net income (a large differential in income would indicate the payments were for support);
(9) whether the obligation was thought to be taxable to the recipient (payments thought to be taxable indicate the payments were for support); and
(10) waivers of maintenance.

Id. At 371-72.

The first factor receives no weight. Although responsibility for the income-tax debt itself would probably not terminate upon the death of either party (the probate estate would still have a claim against it), as between the two parties, the M.S.A. does not specify whether the hold harmless obligation terminates upon remarriage or death.

The second factor weighs in favor of finding the obligation to be part of the property settlement category of marital debt. If and when debtor Irons becomes obligated to pay the tax liability to the plaintiff, the obligation appears to be due and owing in full rather than in installments. *In re MacDonald*, 69 B.R. 259, 276 (Bankr. D.N.J. 1986).

Factors three and eight weigh in favor of an alimony or maintenance characterization of the obligation. When one reads the M.S.A. as a whole, it evinces an intent to balance the parties' incomes and recognizes the income differential requiring such balancing. Various provisions acknowledge that at the time the divorce decree became effective, the plaintiff was disabled and unemployed, while the debtor was employed.

Factors four and ten weigh in favor of a support or maintenance characterization of the obligation. The debt at issue is characterized as a substitute or replacement for maintenance if and when a party defaults on a "hold harmless" obligation; otherwise maintenance is waived. Although the "Maintenance" paragraph does not enumerate these obligations, it is disingenuous to suggest an implicit cross-reference to anything other than the "Debts and Obligations" paragraph on page 10 - the paragraph assigning the income tax obligation to debtor Irons. Other courts have recognized that the absence or inadequacy of direct support obligations may cause other portions of the marital dissolution decree, such as the debt assumption provisions, to have "the actual effect of providing necessary support." *MacDonald*, 69 B.R. at 276, 278.

Factors five and six weigh in favor of a support or maintenance characterization of the obligation. The obligation at issue herein stems from a paragraph labeled "Maintenance" as well as from a related paragraph of debts it implicitly cross-references. It does not stem from the paragraph entitled "Property Settlement," and no other paragraph concerning support payments exists.

Finally, factors seven and nine receive no weight. There were two children in need of support at the time the M.S.A. became effective; however, a separate and unrelated provision on page eight governs those obligations, they are not at issue in this adversary proceeding. In addition, the M.S.A. does not specify whether any amount that Irons pays toward the income tax liability

would be considered taxable income of Drazin.

The Court finds on balance that the debt owed by Debtor Susan Mary Irons to her former spouse is nondischargeable. The Debtor asserts that her former spouse has to first obtain an order from the domestic relations court awarding him support and that the M.S.A. debt is separately dischargeable. The Court does not agree. The support obligation is conditioned on her failure to pay the IRS debt and is therefore not independent. Discharge of the M.S.A. debt before a state court judge rules on the former spouse's claim could jeopardize the claim. In response to a query from the court, counsel for Debtor Susan Mary Irons agreed to stipulate that upon discharge of the M.S.A. debt Neal Drazin would still have a claim for maintenance. The Debtor's position elevates form over substance by asking for discharge of a debt while maintaining that the former spouse can enforce the same debt by seeking a support order.

The court need not decide whether Neal Drazin must pursue an order from the domestic relations court to access the support provided by the M.S.A.; it need only characterize a debt under federal law and then determine whether the § 523(a)(5) exception to the discharge injunction applies.

### ORDER

**Summary Judgment is awarded in favor of the Plaintiff Neal Drazin. The $31,232.00 debt owed by Debtor Susan Mary Irons to Neal Drazin is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).**

Dated: May 17, 2005                              ENTERED:

                                                                          *Jacqueline P. Cox*
                                                          Jacqueline P. Cox
                                                          United States Bankruptcy Judge